**In the Matter of Robert W. FORD, Debtor.**

**Michael E. KEPLER, Trustee, Plaintiff,**

**v.**

**INDEPENDENCE BANK OF MADISON, Defendant.**

**Adv. No. 85–0177–7.**

United States Bankruptcy Court, W.D. Wisconsin.

June 11, 1986.

Timothy Peyton, Kepler Law Offices, Madison, Wis., for plaintiff.

Michael J. Lambert, Hauser Law Offices, S.C., Madison, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

This controversy has been submitted to the court on stipulated facts and since no material facts are in dispute is ripe for summary judgment. The debtor, Robert W. Ford, filed in chapter 11 on February 18, 1983. Both before and after filing he operated a towing service under annual contracts with the City of Madison, awarded each December for the following calendar year. The debtor billed and was paid by the city of Madison each month for the previous month's work.

On April 1, 1981, the debtor entered into a general business security agreement with the defendant Independence Bank of Madison ("the bank") which granted a security interest in *inter alia* the debtor's contract rights "now owned or hereafter ac-

quired...." The debtor also granted the bank a security interest in various of the debtor's tow trucks by a separate agreement. Both security agreements were duly perfected.

On April 20, 1984, this court confirmed the debtor's modified chapter 11 plan. The parties have stipulated that under the plan the debtor would have continued to pay secured creditors pursuant to their contractual arrangements. The case was converted to chapter 7 on October 19, 1984.

The plaintiff, trustee in the chapter 7 case, seeks to recover a total of $9,310.00 of alleged towing contract proceeds paid by the debtor to the bank during 1984. Of this amount $2,284.00 was paid by the debtor prior to confirmation of the debtor's chapter 11 plan and $7,026.00 was paid after confirmation.

The trustee argues that pursuant to 11 U.S.C. § 552, the filing of the debtor's bankruptcy in 1983 operated to abrogate the bank's security interest in the 1984 contract with the city of Madison and the payments to the bank constituted an unauthorized transfer of contract proceeds which were property of the estate. The bank argues that the contract proceeds were not property of the estate and that in any event the payments were pursuant to the debtor's confirmed plan of reorganization.

## I.

Section 549(a) generally allows the trustee to avoid unauthorized post-petition transfers of property of the estate.[1] The trustee argues that the 1984 contract represents an interest obtained by the debtor after the commencement of the chapter 11 case and therefore was property of the bankruptcy estate pursuant to 11 U.S.C.

---

1. 11 U.S.C. § 549(a) provides:
 (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
 (1) that occurs after the commencement of the case; and

 (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
 (B) that is not authorized under this title or by the court.

§ 541(a)(1) and (7).[2] The trustee further argues that the transfers were not authorized by title 11 nor by the court.

The bank, however, urges that pursuant to section 348(a) of the Code the conversion of the debtor's case from chapter 11 to chapter 7 relates back to the original date of filing, and that for all purposes not specifically excluded in section 348(b) and (c) the debtor's case must be treated as though it were a chapter 7 case actually filed at the time of the original filing. The bank thus reasons that the debtor's earnings under his 1984 contract never became property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and that the transfer of a portion of those earnings to the bank is not avoidable under section 549.[3]

■ It is first necessary to consider the effect of the conversion of the debtor's case. 11 U.S.C. § 348(a) provides:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

Subject to the exceptions contained in the other subsections, a chapter 7 case which has been converted from a case under another chapter is considered to have been commenced on the date of the original petition. *In Re Langholf,* 37 B.R. 414 (Bankr.

N.D.Ill.1984). This does not mean, however, that all actions taken in the case prior to conversion become nullities. The express intent of Bankruptcy Rule 1019 which implements section 348 is to preserve any action taken in the case prior to conversion.[4] *See* 2 *Collier on Bankruptcy* ¶ 348.07 at 348–11 (15th ed. 1985).

■ At least with repsect to chapter 13 conversions there is a split of authority as to the effect of the conversion upon wages or other property acquired by the chapter 13 debtor during the period after the commencement of the chapter 13 case but prior to its conversion to chapter 7. Some cases, following what was perceived to be the literal language of section 348(a), have held that wages and other property acquired by the debtor post-petition but pre-conversion are not property of the chapter 7 estate after conversion. *See In Re Bullock,* 41 B.R. 637 (Bankr.E.D.Pa.1984); *In Re Hannan,* 24 B.R. 691 (Bankr.E.D.N.Y.1982). *See also In Re Dennis,* 31 B.R. 128 (Bankr. M.D.Ga.1983); *In Re Selner,* 18 B.R. 420 (Bankr.S.D.Fla.1982). However, as was aptly pointed out in *In Re Tracy,* 28 B.R. 189 (Bankr.D.Me.1983), section 348 does not state that upon conversion a case is to be treated in all respects as if it had originally been filed under the chapter to which it has been converted. In that case the court found it appropriate to treat wages which the debtor had received after the filing of his chapter 13 petition but prior to conversion to chapter 7 as property of the chapter 7 estate. The court found that this treatment was consistent with the treat-

---

**2.** 11 U.S.C. § 541(a) provides in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a)(1), (7).

**3.** The bank also contends, but this fact has not been formally stipulated to, that it only received such of the contract proceeds during 1984 as

were necessary to keep the debtor's payments on the trucks current. It is undisputed that the bank's lien on the trucks continued unimpaired both before and after confirmation of the debtor's plan.

**4.** The Advisory Committee note to B.R. 1019 states in relevant part:

> This rule is derived from former Bankruptcy Rule 122 and implements § 348 of the Code. The rule applies to proceedings in a chapter 7 case following supersession of a case commenced under chapter 11 or 13, whether the latter was initiated by an original petition or was converted from a pending chapter 7 or another chapter case. The rule is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7.

ment of claims which arise in the pre-conversion period. *Id.* at 190.

The status of pre-conversion property in chapter 13 cases was treated in more detail by the court in *In Re Wanderlich,* 36 B.R. 710 (Bankr.W.D.N.Y.1984). In *Wanderlich* the court observed that by its terms section 348(a) does not purport to in any way alter or modify the provisions or applicability of sections 541 and 1306 of the Code which define the property of the chapter 13 estate. The court correctly observed that section 1306 specifically deals with the status of post-petition, pre-conversion wages in chapter 13 cases. The court found that such wages clearly become property of the chapter 7 estate upon conversion of the case. In comparing chapter 13 conversions to chapter 11 conversions the court noted that chapter 11 has no equivalent to section 1306 because in the vast majority of cases post-petition, pre-conversion property is generated from existing property of the chapter 11 estate and is thus included in the post-conversion chapter 7 estate pursuant to 11 U.S.C. § 541(a)(7).[5]

The reasoning of *Wanderlich* and *Tracy* is directly applicable to this case. It would be anomalous to conclude that property acquired by the chapter 11 estate after the commencement of the case reverts unconditionally to the debtor upon conversion to chapter 7 while post-petition, pre-conversion debts are treated as though they arose prior to the original chapter 11 filing.[6] Further, by the express terms of section 541(a)(7) the contract proceeds here in question constitute property of the bankruptcy estate regardless of whether the debtor's chapter 7 case is considered for all purposes to have been filed on the date of the chapter 11 petition. This is so because the contract proceeds constitute property generated by the operation of estate assets during the pendency of the debtor's reorganization attempt. Therefore, until the con-

firmation of the debtor's plan of reorganization such property was property of the estate notwithstanding section 348(a).

 After the confirmation of the debtor's plan the estate property revested in the debtor under the terms of the confirmed plan. Section (f)(3) of the debtor's plan provided:

Upon confirmation, the Debtor shall be revested with its assets, subject only to outstanding liens which are not avoidable by the Debtor under the provisions of title 11 of the United States Code, and entitled to manage its affairs without further order of the court.

11 U.S.C. § 1141(b) provides:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

This court has previously held that in the absence of any contrary provisions in a plan title to property revests in the debtor along with normal ownership rights. *In Re Wood,* 12 B.C.D. 1196, 47 B.R. 774 (Bankr.W.D.Wis.1985). *See also U.S. v. Redmond,* 36 B.R. 932 (D.Kan.1984). In this case there are no contrary provisions in the plan of reorganization. The property of the estate revested in the debtor subject only to outstanding liens. Section 549(a) expressly applies only to property of the estate. Since all of the debtor's property revested it is clear that the trustee may not avoid any transfers which occured after confirmation of the debtor's plan.

### II.

 The operation of section 348(a) of the Code does not result in the retroactive divestment of post-petition property acquired by the estate upon conversion to chapter 7. Nor does the fact that a case is converted to chapter 7 following the failure of a confirmed plan result in the nullification of all actions by the parties or orders

---

**5.** *See* footnote 2, *supra.*

**6.** 11 U.S.C. § 348(d), which deals with pre-conversion claims, provides:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under

section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

of the court which occurred during the pendency of the unsuccessful plan.[7] Payments under a confirmed plan, even if considered to have been made from "property of the estate," constitute payments authorized "under this title or by the court," 11 U.S.C. § 549(a)(2)(B), and may not be avoided pursuant to section 549.

The payments made prior to the confirmation of the debtor's plan present a more difficult problem since those payments were made from property of the estate and may be avoided by the trustee if not authorized under the Code or by the court. 11 U.S.C. § 549(a)(2)(B). Section 1108 of the Code provides "[u]nless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108. Section 1107 provides in relevant part "a debtor in possession shall have all the rights ... and powers ... of a trustee serving in a case under this chapter."[8] Thus the debtor was authorized to continue to operate his business. That authorization necessarily implies the right to continue making payments to secured creditors.

The bank has alleged, and the trustee has not disputed, that only so much of the contract proceeds as was needed to make the loan payments relating to the debtor's tow trucks was disbursed to the bank. The use of funds by the debtor to keep current on his secured debt was, in the absence of any proof to the contrary, a proper exercise of the power to operate the business under section 1108. The debtor's pre-confirmation truck payments were thus authorized under the Code and may not be avoided under section 549.

Even though the bank lost its security interest in the debtor's after-acquired contract rights pursuant to section 552(a) of the Code, the payments to the bank were properly made. Those prior to confirmation were authorized under section 1108 and those made after confirmation of the plan were not made from property of the estate and thus are not within the terms of section 549.

Upon the foregoing which constitute my findings of fact and conclusions of law the complaint of the plaintiff trustee must be dismissed. It may be so ordered.

---

7. *See* Bankruptcy Rule 1019; 2 *Collier on Bankruptcy, supra* at 348–11. *See also* footnote 4, *supra.*

8. 11 U.S.C. § 1107(a) states:
 Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title and powers, and shall perform all the functions and duties, except the duties specified in section 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.